UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

**FILED**

**99 NOV 16 PM 3: 16**

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| LEIGH MYERS-NICHOLS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Civil Action No. CV-98-S-2665-NE |
| | ) |
| LOUIS CALDERA, Secretary | ) **ENTERED** |
| of the United States Army; | ) |
| DAVID OLDANI; and SYSTEMS | ) **NOV 16 1999** |
| ENGINEERING SOLUTIONS, INC., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

Plaintiff instituted this action against defendants on October 20, 1998, by filing a four count complaint alleging: that she had been subjected to a sexually hostile work environment in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), by the Secretary of the United States Department of the Army ("DOA") and Systems Engineering Solutions, Inc. ("SESI") (Count I); that DOA and SESI negligently and/or wantonly breached an asserted common law duty "to provide Plaintiff with a work place environment free of unwelcomed [sic] and unwanted sexual harassment" (Count II); that DOA and SESI breached an implied contract "to provide Plaintiff with a working place environment that was free of intimidation, hostility, or offensive discrimination, and especially, free from unwanted and

unsolicited sexual harassment" (Count III);[1] and that defendant David Oldani ("Oldani") and DOA "by notification" invaded her privacy by wrongfully intruding into her "private activities in such a manner as to outrage or cause mental suffering, shame, or humiliation to a person of ordinary sensibilities" (Count IV).

This action is before the court on the following motions: i) DOA's motion to dismiss (Doc. No. 17), which the court has construed as a motion for summary judgment; ii) DOA's motion to file a reply to plaintiff's brief in opposition to the foregoing motion to dismiss (Doc. No. 36); iii) SESI's motion for summary judgment (Doc. No. 37); iv) SESI's motion to file a reply to plaintiff's brief in opposition to its motion for summary judgment (Doc. No. 49); v) plaintiff's motion to strike the reply brief filed by SESI; and vi) SESI's motion to substitute reply brief (Doc. No. 52). In this memorandum opinion, the court will address each dispositive motion and, in the order entered contemporaneously herewith, rule on all remaining motions.

## I. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c) provides that summary judgment not only is proper, but "shall be rendered forthwith if

---

[1] In her amended complaint, plaintiff withdrew her breach of implied contract claim against DOA. (Plaintiff's amended complaint (Doc. No. 34) at Amendment H; see also plaintiff's brief (Doc. No. 33) at 9-10.)

2

the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. ..." (Emphasis added.) The movant bears the initial burden of showing the court, by reference to materials on file, that no genuine issues of material fact exist to be decided at trial. *See Celotex Corp. v. Catrett* , 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). The moving party discharges this burden by "showing" or "pointing out" to the court that there is an absence of evidence to support the non-moving party's case. *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995)(*per curiam*). Rule 56 permits the movant to discharge this burden with or without supporting affidavits. *See Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. When the moving party has discharged its burden, the non-movant must go beyond the pleadings and designate specific facts showing there is a genuine issue for trial. *See Jeffery*, 64 F.3d at 593.

In deciding whether the moving party has met its burden, the court is obligated to draw all inferences from the evidence

3

presented in the light most favorable to the non-movant and, also,

to resolve all reasonable doubts in that party's favor. *See Spence

v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989). Inferences in favor

of the non-movant are not unqualified, however. "Mere general

allegations which do not reveal detailed and precise facts will not

prevent the award of summary judgment." *Resolution Trust Corp. v.

Dunmar Corp.*, 43 F.3d 587, 592 (11th Cir. 1995) (citation omitted).

Moreover, evidence that is merely colorable, *see Brown v. City of

Clewiston*, 848 F.2d 1534, 1537 (11th Cir. 1988), conclusory, *see

Peppers v. Coates*, 887 F.2d 1493, 1498 (11th Cir. 1989), or

conjectural, does not create a genuine issue of material fact.

Thus, if a reasonable fact finder evaluating the evidence could

draw more than one inference from the facts, and if that inference

introduces a genuine issue of material fact, then the court should

not grant summary judgment. *See Augusta Iron & Steel Works v.

Employers Ins. of Wausau*, 835 F.2d 855, 856 (11th Cir. 1988). A

"genuine" dispute about a material fact exists if the "evidence is

such that a reasonable jury could return a verdict for the

nonmoving party." *Jeffery*, 64 F.3d at 594 (quoting *Anderson v.

Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91

L.Ed.2d 202 (1986)). The bottom line is "whether the evidence

4

presents a sufficient disagreement to require submission to a jury
or whether it is so one-sided that one party must prevail as a
matter of law." *Anderson*, 477 U.S. at 251-52, 106 S.Ct. at 2512.

## II. FACTUAL BACKGROUND

In June of 1996, plaintiff, a female, began to work at the
United States Army Missile Command located on Redstone Arsenal near
Huntsville, Alabama. (Plaintiff's affidavit (Doc. No. 27) at 1.)
Her position was created by virtue of two contracts between DOA and
SESI, (Hammond's affidavit ¶ 3 (Doc. No. 18)), wherein SESI agreed
to "provid[e] direct support work for" DOA. (Complaint ¶ 2.)
Although plaintiff was an employee of, and received her paycheck
from SESI (Hammond's affidavit ¶ 7), DOA "furnished the site where
[she] worked, all of the equipment, down to pins and paper, and all
resources for [her] to perform [her] work." (Plaintiff's affidavit
at 2.)

Plaintiff's cubicle was positioned adjacent to that of David
Oldani, a DOA employee. (Plaintiff's affidavit at 3.) Plaintiff
contends that Oldani sexually harassed her on a number of
occasions. (*Id.*) Plaintiff also contends that she reported
Oldani's conduct to both Gary Fuller, her supervisor at SESI, and
to Debbie Okeson, her DOA "team leader." (*Id.; see also*

5

plaintiff's affidavit at 4.) The last reported incident of sexual
harassment occurred in April of 1997, just prior to Oldani's
departure from government service. (Plaintiff's complaint ¶ 6;
SESI's exhibits C & F.)

Because DOA did not renew its contracts with SESI, SESI
terminated plaintiff's employment, along with that of all other
SESI employees working on Redstone Arsenal, on August 15, 1997.

Plaintiff wrote a letter to the Equal Employment Opportunity
Commission ("EEOC") on August 21, 1997, six days after SESI had
terminated her employment, saying "I hereby submit a complaint
against Mr. David Oldani, a former employee of the U.S. Army
Missile Command...." (SESI's exhibit C.) Plaintiff disclosed that
she was "a Government Contractor employed at Redstone Arsenal" and
that her "complaint concerns sexual harassment incidents that took
place over 1996-97." (*Id.*) She recounted the details of Oldani's
sexually harassing behavior, and also the results of a subsequent
investigation conducted by DOA's Provost Marshall. (*Id.*) The only
reference made by plaintiff to SESI or its employees was her
assertion that, on one occasion, she had called Gary Fuller, her
SESI supervisor who was working in another building, and asked him
to come to her work area and help her after Oldani sexually

6

harassed her in April of 1997.  (*Id.*)

The EEOC responded to plaintiff's charge on September 8, 1997.

(SESI's exhibit E.)    By letter from Vincent P. Intoccia, an

Administrative Law Judge, the EEOC informed plaintiff that it had

"no jurisdiction over the matters set forth in your letter."  (*Id.*)

Specifically, the EEOC interpreted plaintiff's letter as a charge

against DOA and, accordingly, directed plaintiff as follows:

> Any complaints of discrimination against the federal
> government must be initially filed with the federal agency,
> where the alleged act(s) of discrimination occurred.
> Complaints against DOA, Redstone Arsenal can be initiated by
> contacting:  Mr.  Charles Ray,  EEO Officer,  DOA-MICOM,
> Redstone Arsenal, AL....  If there are further questions
> concerning this matter, please contact me at 205/731-1173.

(*Id.*)  The EEOC's response did not mention SESI.

Plaintiff complied with the EEOC's directive and contacted the

DOA EEO Officer on September 18, 1997.    (SESI's exhibit F;

Plaintiff's complaint ¶ 4(c)).  He launched an investigation and

interviewed nine DOA employees, but no former employees of SESI.

(SESI's exhibit F.)  The EEO Officer conducted his final interview

on April 20, 1998, and informed plaintiff of her right to file a

formal administrative complaint with DOA's EEO office in Arlington,

Virginia.   (*Id.*)   Plaintiff filed a complaint on May 1, 1998

(SESI's exhibit G), but DOA dismissed it on June 12, 1998, on the

7

basis of procedural deficiencies: namely, that plaintiff had not
contacted an EEO counselor within forty-five days of the date of
the last reported incident of sexual harassment and, therefore, she
had failed to comply with 29 C.F.R. § 1614.107(b). (SESI's exhibit
H.)

### III. DISCUSSION

**A. DOA's Motion to Dismiss**

#### 1. Plaintiff's Title VII claim

DOA contends that plaintiff has failed to state a cognizable
Title VII claim against it, because SESI, not DOA, was plaintiff's
employer. In support of this argument, DOA submits the affidavit
of Ruth Ann Hammond, a DOA employee working at Redstone Arsenal[2]
who avers, in pertinent part:

5.     In June 1996, [plaintiff] began working on Redstone
       Arsenal at the MICOM Corporate Information Center
       offices in the Software Engineering Process Group in
       Building 5678, a location that was occupied by both
       contractor and government employees.

6.     According to records in the CIC Business Management
       Office, [plaintiff's] immediate supervisor was Mr.
       Gary Fuller, an employee of SESI. Mr. Fuller was
       responsible for overseeing [plaintiff's] work
       schedule, leave, and attendance.

7.     SESI had complete control over [plaintiff's] salary,
       accumulation of retirement benefits, payment of

---

[2]On the date of her affidavit, Ms. Hammond was a Team Leader, Computer
Specialist, working in the Information Systems Directorate, Corporate Information
Center, on Redstone Arsenal.

8

        Social Security taxes, and withholding of taxes on
        her salary.

8.     There was no government oversight of [plaintiff's]
       work.

(Hammond's affidavit (Doc. No. 18) ¶¶ 5-8.)

Plaintiff, in response, argues that she was a "dual employee"

of both DOA and SESI and, accordingly, contends that her claims are

properly brought against DOA.  (Amended complaint at amendment B.)

In support of this argument, plaintiff proffers two additional

affidavits: her own (Doc. No. 27) and that of Janelle Clemons (Doc.

No. 32), a DOA employee who worked with plaintiff on Redstone

Arsenal.    Both affidavits address the issue of whether DOA

employees exercised control over the terms and conditions of

plaintiff's employment.  Plaintiff avers:

Before I obtained the position, I was required to interview
with a team leader of the [DOA] Software Processing Group,
Debbie Okeson, who advised I would be a contract worker, but
I would report, as part of a team or group, to not only Gary
Fuller, who would be my supervisor at S.E.S.I., but also to
[her,] Ms. Okeson, and later to Melinda Ricketts, [another
DOA employee] who replaced Debbie Okeson during my tenure in
the group.  During this time, I was assigned tasks by Debbie
Okeson  and  Melinda  Ricketts.    Gary  Fuller  actually
functioned only as a liaison between the government-
Department of the Army and S.E.S.I.

(Plaintiff's affidavit (Doc. No. 27) at 2.)  Ms. Janelle Clemons

likewise avers that "[w]hen [plaintiff] was supervised, 75% to 80%

of the time, she took ... direct supervision from the team leader

9

who was either Debbie Oakeson[3] or Melinda Ricketts, both D.O.A.
employees." (Clemons' affidavit at 3.)

    Both plaintiff and Clemons also aver that DOA has recommended
the hiring and firing of contract employees, and has exercised
direct authority in those areas by not only interviewing candidates
prior to their employment by a private contractor, as plaintiff
described above, but also by "pull[ing] funding from the contract
to get rid of a contractor employee." (Clemons' affidavit at 2;
*see also* plaintiff's affidavit at 3.) Moreover, Clemons concludes
that "[a]ll of us worked as a team, whether we were being paid by
the Army or paid by a private contractor. All of us answered to
the team leader who was a [DOA] civilian employee." (Clemons'
affidavit at 1.)

    Courts faced with the issue of whether an individual is an
employee or an independent contractor have employed a variety of
tests. *See Cobb v. Sun Papers, Inc.*, 673 F.2d 337, 339-340 (11th
Cir. 1982). Some have applied the common law approach, whereby the
court examined the "traditional common law test of agency, turning
on the employer's right to control." *Mares v. Marsh*, 777 F.2d

---

[3]While plaintiff's affidavit (Doc. No. 27) spells this person's name as
"Okeson," the affidavit of Ms. Clemons (Doc. No. 32) spells the name as
"Oakeson." The court does not know which version is the correct spelling of the
name.

10

1006, 1067 (5th Cir. 1985). Others have applied a more liberal

"economic realities" test that focuses on whether the individual is

financially dependent on the employer. *See Hickey v. Arkla

Industries, Inc.*, 699 F.2d 748, 751 (5th Cir. 1983).

The Eleventh Circuit, however, has adopted a hybrid test which

considers not only the employer's right to control, but also the

individual's financial dependence on the employer. *See Cobb*, 673

F.2d at 341 (adopting the approach taken in *Spirides v. Reinhardt*,

613 F.2d 826 (D.C. Cir. 1979)). The most important consideration,

although not entirely determinative, is "the extent of the

employer's right to control the 'means and manner' of the worker's

performance...." *Cobb*, 673 F.2d at 340 (citing *Spirides*, 613 F.2d

at 831). As the *Spirides* court explained, "[i]f an employer has

the right to control and direct the work of an individual, not only

as to the result to be achieved, but also as to the details by

which that result is achieved, an employer/employee relationship is

likely to exist." *Spirides*, 613 F.2d at 831-832.

The *Cobb* court also set forth additional factors, other than the

right to control, which the court may consider:

> (1) the kind of occupation, with reference to whether the
> work usually is done under the direction of a supervisor or
> is done by a specialist without supervision; (2) the skill
> required in the particular occupation; (3) whether the

11

"employer" or the individual in question furnishes the
equipment used and the place of work; (4) the length of time
during which the individual has worked; (5) the method of
payment, whether by time or by job; (6) the manner in which
the work relationship terminated; *i.e.*, by one or both
parties, with or without notice and explanation; (7) whether
annual leave is afforded; (8) whether the work is an
integral part of the business of the "employer"; (9) whether
the worker accumulates retirement benefits; (10) whether the
"employer" pays social security taxes; and (11) the
intention of the parties.

*Cobb*, 673 F.2d at 340 (citing *Spirides*, 613 F.2d at 832).

In the present case, the court finds that it is unable to make
a determination, based on the existence of material, disputed
facts, as to whether plaintiff was an independent contractor or an
employer of DOA. Specifically, DOA's witness, Ms. Hammond, averred
that "[t]here was no government oversight of [plaintiff's] work."[4]
Plaintiff, on the other hand, in addition to her witness, Ms.
Clemons, both aver that DOA did, in fact, supervise plaintiff's
work, and that DOA employees assigned plaintiff tasks. Plaintiff
also contends that DOA exercised control over the hiring and firing
of contract employees, whereas Ms. Hammond contends that plaintiff
was hired by SESI. Thus, the parties dispute the extent, as well
as the existence, of DOA's right to control the "means and manner"
of plaintiff's performance.

In making this determination, the court also has considered the

---

[4]Hammond's affidavit, ¶ 8, quoted *supra* at 8-9.

12

other factors articulated by the Eleventh Circuit in *Cobb*. The
first additional factor, whether plaintiff's work is performed
under the direction of a supervisor, is disputed. DOA claims that
plaintiff was supervised by "Mr. Gary Fuller, an employee of SESI.
Mr. Fuller was responsible for overseeing [plaintiff's] work
schedule, payment of Social Security taxes, and withholding taxes
on her salary." (Hammond's affidavit ¶ 6.) Plaintiff contends,
however, that she was supervised by DOA employees. (Plaintiff's
affidavit at 2; Clemons' affidavit at 3.) Moreover, although SESI
appears to have paid plaintiff's salary and withholding taxes
(factor 10), plaintiff avers that DOA furnished all of her work
equipment and supplies (factor 3). Accordingly, as there are
several issues of disputed material fact, and none of the remaining
factors weigh decisively in favor of either party, the court finds
that summary judgment is due to be denied with regard to
plaintiff's Title VII claim against DOA.

## 2.  Plaintiff's tort claims

DOA also requests this court to dismiss the remaining counts of
plaintiff's complaint on the ground that she failed to comply with
28 U.S.C. § 2675(a), namely, plaintiff failed to submit an
administrative tort claim to DOA prior to initiating this present
lawsuit. In support of that argument, DOA submitted the affidavit

13

of Joseph H. Rouse (Doc. No. 21), the Chief of the United States
Army's Tort Claim Division, who avers, in relevant part:

> In [my] capacity[,] I receive all claims against the Army,
> in the amount in excess of $25,000. ... A thorough search of
> all records and files available to this Service has revealed
> that no administrative claim has been filed by [plaintiff],
> under the [Federal Tort Claims Act].

(Rouse's affidavit at 1.)

Plaintiff contends that she, in fact, did file an administrative
complaint with DOA's EEO office in Arlington, Virginia (SESI's
exhibit F), and she argues that if that agency was the
inappropriate one to handle her tort claims, this mistake should be
construed against DOA, and not her.   Specifically, plaintiff
contends that her only requirement under the Federal Tort Claims
Act ("FTCA") is to file a complaint with an administrative agency,
and if she files with the wrong agency, "it is the duty of that
Federal agency to transfer it to the appropriate agency if the
appropriate agency can be identified." (Plaintiff's brief (Doc. No.
33) at 11.)   Plaintiff cites 28 C.F.R. § 14.2 and *Greene v. United
States*, 872 F.2d 236, 237 (8th Cir. 1989), to support her argument.

Upon careful examination of plaintiff's complaint, however, the
court finds that it need not reach this issue.   Specifically, the
court finds that the factual basis for plaintiff's tort claims are

14

identical to her Title VII claim and, therefore, her exclusive

remedy against DOA lies solely in Title VII. In *Brown v. General*

*Services Administration*, 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d

402 (1976), the Supreme Court held that section 717 of the Civil

Rights Act of 1964 "provides the exclusive judicial remedy for

claims of discrimination in federal government." *Brown*, at 835, 96

S.Ct. at 1969. Upon examination of the extensive legislative

history behind Title VII, the Court noted that the unambiguous

legislative intent was to create an "exclusive, pre-emptive

administrative and judicial scheme for the redress of federal

employment discrimination." *Id.* at 829, 96 S.Ct. at 1966. A

statute which "provides for a careful blend of administrative and

judicial enforcement powers," the Supreme Court determined, is

"inconsistent with the ... contention that the judicial remedy

afforded by § 717(c) was designed merely to supplement other

putative judicial relief." *Id.* at 832-33, 96 S.Ct. at 1968.

Section 717, the prohibition against discrimination in federal

government employment, is now set forth, as amended, in 42 U.S.C.

§ 2000e-16, which provides, in pertinent part:

> All personnel actions affecting employees or applicants for
> employment ... in military departments ..., in executive
> agencies as defined in section 105 of Title 5 ..., shall be
> made free from any discrimination based on race, color,

15

religion, sex, or national origin.

42 U.S.C. § 2000e-16(a).   Moreover, as the Eleventh Circuit
recently explained with regard to the Age Discrimination in
Employment Act ("ADEA"):[5]

> Allowing a state-law conspiracy claim in a ADEA case would
> permit plaintiffs to make an "end run" around this federal
> statutory structure for ... discrimination suits.   Such
> evasion would surely frustrate congressional intent.   We
> therefore hold that the enforcement of rights secured
> through the ADEA must be pursued in the manner specified in
> the ADEA, not through alternative state-law mechanisms.

*Nance v. Maxwell Federal Credit Union*, 186 F.3d 1338, 1342-43 (11th
Cir. 1999); *see also Rivera v. Heyman*, 157 F.3d 101, 105 (2nd Cir.
1998) (holding that Title VII provides the sole remedy for federal
employees   asserting   employment   discrimination   claims   and,
accordingly, dismissing employee's claims that his supervisors
violated Human Rights Laws of the State and City of New York);
*Jackson v. Widnall*, 99 F.3d 710, 716 (5th Cir. 1996) (dismissing
employee's allegations of constitutional violations because they
"arise out of the same facts as his employment discrimination
claims, [and,] therefore, they are preempted by Title VII and
cannot afford an independent ground for relief").

Accordingly,   the   court   finds   that   Counts   II   and   IV   of

---

[5] The court notes that the rationale in *Brown* has been extended to the
ADEA.   *See Ray v. Nimmo*, 704 F.2d 1480, 1485 (11th Cir. 1983).

16

plaintiff's complaint are due to be dismissed against DOA, as plaintiff's exclusive remedy in pursuing her sexual harassment allegations against a federal governmental department lies in her Title VII claim, and not her negligence, wantonness, and invasion of privacy claims.

**B. SESI's Motion for Summary Judgment**

**1. Plaintiff's Title VII claim**

SESI argues that plaintiff's Title VII claim is due to be dismissed, as plaintiff failed to file an EEOC charge against it. Specifically, SESI claims that plaintiff's August 21, 1997 letter to the EEOC fails to mention SESI and, accordingly, plaintiff has not met the prerequisites for instituting an action under Title VII.

Plaintiff admits that she failed to mention SESI in her August 21, 1997 letter, but argues: 1) that the notice requirement of Title VII is not mandatory; and 2) that the requirement should be waived in the present case, because SESI had adequate notice of plaintiff's sexual harassment claims. Specifically, plaintiff contends that she mentioned Gary Fuller, plaintiff's SESI supervisor, in her August 21, 1997 letter, and such allusion is sufficient to constitute notice of plaintiff's claims against SESI.

Generally speaking, the identification of a defendant in the

17

EEOC charge is a prerequisite to a lawsuit under Title VII.  *See*
*Virgo v. Riviera Beach Associates*, 30 F.3d 1350, 1358 (11th Cir.
1994).    However, the Eleventh Circuit has held that this
requirement is to be liberally construed, and where the purposes of
the naming requirement have been fulfilled, "a party unnamed in the
EEOC charge may be subjected to the jurisdiction of the federal
courts."  *Id.* at 1359.

The pivotal issue, therefore, is whether the two purposes of the
naming requirement have been satisfied, specifically, whether the
unnamed party was provided with adequate notice of the charge
against it, under circumstances which afforded that party an
opportunity to participate in the conciliation proceedings and to
voluntarily comply with the requirements of Title VII.  *Id.*   In
deciding whether the purposes of the naming requirement have been
fulfilled, the court must examine a number of factors:

> (1) the similarity of interest between the named party and
> the unnamed party; (2) whether the plaintiff could have
> ascertained the identity of the unnamed party at the time
> the EEOC charge was filed; (3) whether the unnamed parties
> received adequate notice of the charges; (4) whether the
> unnamed parties had an opportunity to participate in the
> reconciliation process; and (5) whether the unnamed party
> actually was prejudiced by its exclusion from the EEOC
> proceedings.

*Id.* at 1359.  After examining the factors enumerated above, the

18

court concludes that plaintiff's failure to mention SESI in her EEOC charge is fatal to her Title VII claim against that entity.

Specifically, plaintiff knew the extent of SESI's involvement in her case at the time she mailed her letter, yet she began her letter by stating that she "hereby submit[s] a complaint against Mr. David Oldani, a former employee of the U. S. Army Missile Command...." (SESI's exhibit C.) Furthermore, nothing contained in plaintiff's letter to the EEOC gave rise to even an inference that SESI was a possible party liable for the harassment she complained of and, therefore, SESI did not receive adequate notice of the charges. Although plaintiff, in passing, did mention Gary Fuller, her SESI supervisor, her allusions to Fuller were in no way derogatory. Indeed, plaintiff called him "to come over to my work area and help me." (Id.) Fuller then attempted to aid plaintiff by calling a government supervisor, Richard Manley, and requesting his assistance in dealing with David Oldani, a DOA employee. (Id.) If any inferences are to be drawn from the references to Fuller's involvement contained in plaintiff's letter, they are complimentary and not ones that would put a reasonable person on notice of SESI's potential liability. Moreover, SESI did not have an opportunity to participate in the conciliatory process, because plaintiff

19

subsequently filed an administrative complaint with DOA. Plaintiff argues that this filing should not be construed against her, because she was instructed to do so by Judge Intoccia, an Administrative Law Judge for the EEOC. The court, however, does not agree.

Although it is true that the ALJ construed plaintiff's complaint as one against the federal government, and accordingly instructed her to file an administrative complaint with a DOA EEO Officer, the ALJ also stated that if she had any "further questions concerning this matter, please contact me at 205/731-1173." (SESI's exhibit G.) If plaintiff had originally intended to file a complaint against a private employer, like SESI, she could have contacted the ALJ as described above. Plaintiff, however, failed to do so.

The subsequent investigation conducted by DOA also did not include SESI. Although the EEO Officer assigned to investigate plaintiff's claim interviewed nine witnesses, none of these witnesses included any SESI employees. (SESI's exhibit F.) Additionally, at the time plaintiff mailed her letter to the EEOC, neither she nor SESI were working on Redstone Arsenal. Indeed, DOA did not renew its contracts with SESI as of August 15, 1997, and accordingly, SESI was not present to participate in or obtain

20

knowledge of the subsequent EEO investigation, as plaintiff's EEOC

letter was dated August 21, 1997.    Furthermore, plaintiff has

failed to offer any evidence that SESI participated in any

subsequent stage of her administrative complaint with DOA.

Finally, SESI argues, and the court agrees, that it will be

prejudiced if plaintiff is allowed to proceed with her Title VII

claim, as a key DOA employee and witness in this litigation,

Frankie Doolittle, died after the lawsuit was filed.   Because SESI

did not receive prior notice of this lawsuit, it has been deprived

of an opportunity to depose this witness.

Based on the foregoing, the court finds that plaintiff's Title

VII claim against SESI is due to be dismissed, as plaintiff failed

to name SESI as a defendant in her letter to the EEOC.

## 2.    Plaintiff's state law claims

SESI also contends that plaintiff's remaining claims against it

are due to be dismissed.    Specifically, SESI argues that no

separate cause of action for negligent or wanton failure to provide

"a work place environment free of unwelcomed [sic] and unwanted

sexual harassment" (Count II) can exist separate and apart from

Title VII.    SESI also moves to dismiss plaintiff's breach of

implied contract claim (Count III), but because plaintiff "agrees

the breach of implied contract claim is inappropriate" (plaintiff's

21

brief (Doc. No. 48) at 14), the court will limit its discussion to the appropriateness of Count II.

In *Ulrich v. K-Mart Corporation*, 858 F. Supp. 1087 (D. Kan. 1994), and *Crosten v. Kamauf*, 932 F. Supp. 676 (D. Md. 1996), the district courts of Kansas and Maryland refused to recognize a cause of action, other than a Title VII claim, for an employer's failure to provide a workplace free of harassment. The *Ulrich* court explained its decision, as follows:

> In the court's view, Kansas does not recognize such a tort. The employer is already under a duty, by virtue of Title VII ... to provide a harassment-free workplace. Statutory remedies exist for employees subject to sexual harassment. <u>Recognition of such a tort would permit persons</u> in [the employee's] position <u>to circumvent the administrative exhaustion requirements contained in the statutory scheme.</u> The court is convinced that the existence of such a statutory remedy displaces such a tort claim.

*Ulrich*, 858 F. Supp. at 1095(emphasis supplied). This court is persuaded by the reasoning in *Ulrich* and, therefore, also concludes that Alabama does not recognize a separate, common law tort for an employer's failure to provide a harassment-free workplace. Accordingly, Count II of plaintiff's complaint is due to be dismissed, as it fails to state an independent cause of action under Alabama law.

In conclusion, it must be remembered that Oldani, plaintiff's

alleged harasser, was a DOA employee, not an employee of SESI.
Even if plaintiff had properly included SESI in her letter to the
EEOC, it is unlikely that SESI had the authority to take any
corrective action against Oldani.   Quite honestly, the alleged
harassment occurred on DOA property, the harasser was a DOA
employee, and plaintiff reported Oldani's conduct to her DOA
supervisors.  If any liability is imposed in this action, the fault
should lie with DOA and not SESI.  Accordingly, SESI's motion for
summary judgment is due to be granted in its entirety and
plaintiff's claims dismissed.

## IV.   CONCLUSION

Based on the foregoing, the court finds that DOA's motion to
dismiss is due to be granted in part, as to plaintiff's tort
claims, and denied in part, as to plaintiff's Title VII claim.  The
court further finds that SESI's motion for summary judgment is due
to be granted in its entirety and all of plaintiff's claims against
that entity are due to be dismissed.  An order consistent with this
memorandum opinion will be entered contemporaneously herewith.

DONE this _16th_ day of November, 1999.

United States District Judge

23

SCANNED

PERF & ? YQ!